May it please the court. My name is Cal Potter. I'm from Las Vegas, Nevada. I represent Joni Gold and the plaintiff appellate in this action. Knowing that the court is familiar with the facts in this case, I'd like to focus on why Judge Jones, the trial court judge on the civil rights action, erred in granting summary judgment to both the district attorney's office through the county and the police department. And why he also erred in not allowing us to amend the complaint in this action to bring in the individuals that were responsible for the constitutional violations at the time they occurred, as well as denying us the opportunity to engage in discovery. In this particular matter, Detective Maddox, the investigating officer, submitted an affidavit to the magistrate in the lower criminal court of Clark County, Nevada, and failed to tell the magistrate that, in fact, there was a situation where a guarantee card had made sure that the payees, the individuals that had received the checks that later were found to be on insufficient funds, had actually been paid by the Nevada Federal Credit Union, and that the Nevada Federal Credit Union itself had a contractual obligation to pay these checks and to make them whole, and that, indeed, no crime had been committed. The simple argument that was made... The Nevada Supreme Court thought otherwise. That's correct, Your Honor. It hardly seems obvious that you can blame the police or the prosecutors for holding a belief that the state Supreme Court held. Your Honor, I think what's important in looking at this and, of course, looking back at the situation of how it got started, you have an individual, the police officer, who is contacted by the Nevada Federal Credit Union, Michael McBann. He does not provide all of the information to the magistrate. Instead, what Michael Maddock, the detective, did is he takes the information and then presents it, essentially saying that a crime was committed as to not only these food stores but also as to the credit union. And I think, in looking at the totality of what really took place in all of this, is that when the Nevada Supreme Court is addressing these issues, they do the same thing. They plop it all into one theory that because the credit union had paid that they were victims. And to look at the actual statute or the elements of the statute... Well, they probably were victims, maybe not of this crime, but she lied on her application, right? That's correct. They are out of money, so I think it's fair to say that they were victims. They were victims of their own business practices, but they weren't crime victims. They weren't crime victims as charged as bad checks, nor were they involved in the type of, really, I guess, the crime that ultimately we see in the pardons board hearing and the situation is that they're talking about some kind of fraud or identity theft. Well, they extended credit to her, which is what the check guarantee card is. It's essentially a loan or a line of credit. And the way you draw on this line of credit is by writing a bad check. And, you know, lots of people who they sort of live hand to mouth will sometimes overdraw their checking account counting on their line of credit to come in and then they pay it back and then, you know, it's an arrangement between the bank and the customer that allows the customer to spend money, a little bit of money that she doesn't have. But there's no doubt that they would not have, or at least a substantial doubt, that they would have extended this credit to her had they known her real name. And she used a different name, right, in this account, didn't she? She used the name of Frances Gay, which she was charged under. And she gave a fraudulent credit history, right? Well, the record doesn't show that, Your Honor. And I think that's what is important here. The court, the district court, the federal district court in granting the summary judgment looked at these as the opinion written by Your Honor as a mere technicality. Our argument is that she served 12 years for a crime which she did not commit. And based upon the fact of looking back as to why the crime went forward, I would submit the judge made a particular finding. He said the magistrate had to know what the actual elements of the crime were, that indeed that she went through a preliminary hearing. I would submit that at the time of the preliminary hearing, as shown by the exhibits, the judge that actually heard the preliminary hearing wasn't even an attorney. So there are certain assumptions that are made that just don't hold water in the sense that she was getting a fair and unbiased review by the courts. And I would say simply that the Nevada Supreme Court, in addressing what you said before, did not look at the elements of the crime. They did an order dismissing appeal initially and then followed the same type of logic in terms of what they were looking at in post-conviction and affirming the denial of post-conviction relief. I would also submit that the district attorney that ultimately was responsible, Rex Bell, for putting together this policy, that the policy was to go ahead and prosecute individuals when, in fact, they had not committed a crime, that he is the individual that put together the unit that also worked with the forgery unit and Detective Mike Maddock and that, therefore, he is the policymaker that would be liable also for the situation that Jenny Golden was prosecuted under. The policy that had to be, in this instance, was an unconstitutional policy and it promoted the failure that ultimately resulted in this misfire of justice. Mr. Ponticello, the other individual that was the actual prosecutor at the time of the incident, later at the time of the pardons, the board showed what his clear intent was in terms of working with Mike Maddock. What they were trying to do was get Jenny Golden because they believed that she was a bad person, that she was an individual who had prior dealings with the law and that, in fact, as he put into the newspaper article after the time of the conviction, that she was the biggest crook that he had ever prosecuted in his 11 years as a prosecutor. I think those facts are important when we're looking at whether, in fact, she has a right to seek redress for civil rights violations for the 12 years that she spent in jail. I would, unless the court has other questions, reserve my additional time. Okay. Thank you. We'll hear from Apeliz. May it please the Court, Your Honor, I'm Tom Dillard from Las Vegas, representing defendant in Apeliz, the Las Vegas Metropolitan Police Department. I will be able to take up half the time and leave the remainder to counsel who's representing Clark County. This case, as you're aware, is upon appeal with respect to the propriety of Judge Jones' order granting summary judgment for I'm sorry, just to make sure, you're representing the police. Correct. You're not representing the prosecutor. That's correct, Your Honor. The court counsel is representing the county and the prosecutor. Yes. Okay. Just got to keep space. Yeah. And with respect to the order granting summary judgment for the police department, Judge Jones determined on multiple levels that there was a failure to state a claim for relief, that the evidence available to the officer who instituted the arrest warrant suggested there was probable cause that a criminal offense had been committed in the state of Nevada by plaintiff Ms. Golden, that before any arrest had ever taken place, the officer submitted his case to the prosecuting attorney. The prosecuting attorney made an independent determination that there was probable cause and filed a criminal complaint. Filing of a criminal complaint, Your Honors, preceded the arrest warrant. Based on the prosecutor's independent determination that there was probable cause for a specific charge for which she set forth in the criminal complaint, a judge signed a warrant in reviewing the affidavit and the criminal complaint. Is there any discretion in issuing the warrant once a complaint has been issued? If there's a criminal complaint, does the warrant issue automatically or pretty much automatically? The officer submitted his affidavit, Your Honor, to the prosecutor. Once the prosecutor reviewed it, screened it, determined to go forward, then filed a criminal complaint, then the information was taken to Judge Bixler, who signed an arrest warrant. And what is the allegation about the officer's conduct? Is there any complaint about any wrongdoing or misrepresentation prior to the issuance of the warrant? Your Honor, I don't believe that there is. The affidavit is contained in our supplemental excerpts of Record Tab 1. The central facts for which Chief Judge Kaczynski ultimately wrote his opinion were contained in that affidavit, particularly that Ms. Golden presented a check guarantee card and that the credit union covered the checks and took a loss. Those facts were included in the affidavit. There's no basis to suggest from a factual standpoint that the submitting officer somehow tainted the independent determination of both intermediaries, that being the judge and the prosecutor. All those facts central to ultimately the conviction being overturned were contained in the affidavit. There was no basis that the police tainted the efforts of those with the law degree by submitting false evidence or excluding exculpatory evidence. There's no evidence of that at all. The check guarantee card was mentioned? Yes, Your Honor. Paragraph 12, and that's at the Las Vegas Metropolitan Police Department Supplemental Excerpts of Record at page 13. That's at Tab 1. The paragraph 12 reads, Mr. McBann, that's the credit union employee, reported that all the checks were issued, all the checks were used, rather, with a check guarantee card and that there were insufficient funds in that account to cover those checks. Due to that information, Nevada Federal Credit Union took a loss on the above checks. Isn't the issue at this point whether the district court erred in not allowing the plaintiff to conduct further discrediting before ruling on the summary judgment motion? That's one of the issues, Your Honor. I'd be glad to address that. The police department filed their motion for summary judgment first. The plaintiff filed her opposition the day before discovery cutoff, under the discovery period. And after the time for amendments were allowed, at least in terms of the scheduling order, the judge held a hearing in July 30th of 2008 and made an indication from the bench that he didn't see any basis to grant their counter motion for Rule 56F relief because there was no indication that additional what additional discoveries specifically needed to take place and how that would somehow resist summary judgment. He did, however, indicate that he will take some time to enter his ruling and they could take discovery outside of the discovery period, allow them a month to do that. And if they found any information to make him aware of it, discovery was conducted and there was no supplementation to the record of anything being discovered that would resist summary judgment. Isn't that a little unorthodox for a trial judge to say, I'm going to announce, I'm going to grant summary judgment to the party but I want to follow written decision and the interim plan continues to do your discovery. And if you think you got something, let me know. Would that impact the decision on Rule 56F or on the summary judgment? Sort of a strange procedure to me. Well, Your Honor, the discovery period, at least it was set up, had already closed. And allowing them to do that, he effectually gave them more discovery than was allowed in the discovery period. But he did make specific finding as to the 56F burden that an affidavit must be submitted that indicates what specific discovery is sought, what facts are anticipated will be yielded from that discovery and how those facts would somehow stave off summary judgment. None of that was done. And that the decision with respect to what he granted on 56F and the motion to amend being untimely and futile is an abuse of discretion standard. And I would submit there's nothing in the record to suggest that there was a plain error made in how he handled that, unorthodox or not. Your Honor. I think abuse of discretion is the term you're looking for, not plain error. That's correct, Your Honor. Abuse of discretion. Plain error, I think, applies to facts. They all sound the same. They do. Your Honor, should we hear from opposing or from your court counsel? Yes. My time is up. Thank you, Your Honor. Good afternoon. May it please the Court. I'm Lucinda Como on behalf of Clark County, the Clark County District Attorney's Office, and David Roger as District Attorney. The district court granted our motion for summary judgment basically because of the fact that David Roger was not the correct district attorney. He was not in office at the time of the alleged constitutional violations. And further, because the appellant hadn't provided any evidence that there was a policy or a custom in the district attorney's office, an unconstitutional policy or custom. And even more importantly, I think, as far as dealing with the request for the 56F relief and to do further discovery, it was also argued in the motion for summary judgment, the futility of allowing the amendment to add the additional parties that the appellant had requested. First of all, she wanted to add Frank Ponicello, who was the deputy who prosecuted her underlying criminal case. There was extensive argument. Who also spoke to the – is he the one that spoke to the parole board? Yes, he did. He handled the criminal trial. He did speak at the parole board as well. And would that be subject to immunity? He's not prosecuting at that point. He's just sort of expressing his view. Judge, it was our position that it would be. It's specifically statutorily mandated in the State of Nevada, pursuant to Nevada Barriers Statute 213040, that the district attorney's office participate in that process and in those hearings. When we receive notice or when the DA's office receives notice of a pardons board hearing and a specific defendant, they are required to put forth an opinion regarding that defendant and the request before the pardons board. Well, I mean, that may be the case, but why would that be subject to prosecutorial immunity? Well, Judge, it's our position that it would be subject to the immunity because it is a quasi-judicial activity, we would argue. Because not only is it statutorily mandated, but we would liken the hearing to the same kind of a hearing that California holds and that this Court has recognized as a quasi-judicial proceeding where the pardons board or parole board members are afforded judicial immunity. Well, we haven't said that a prosecutor who appears at the hearing has quasi-judicial immunity. We said that the parole board members are like judges. Right. And so we would liken a prosecutor's participation as a result of the statutory obligation to do so as a continuation of the prosecutorial function, if you will. But the way it's alleged is he did something that a prosecutor is not allowed to do in his own opinion. If he had done that in front of a jury, that would have been unethical and improper for him to say, you know, I convicted her because I think she's guilty. I mean, he didn't do that. If a prosecutor were to do that, that would be outside of his proper function as a prosecutor. So then he goes to the parole board and he says, you know, you know, if he reminds the parole board of the evidence presented and, you know, the case against her, I can sort of see what that would be prosecutorial. But he says, no, let me tell you, in my experience, she's the worst criminal I've ever met, or, you know, words to that effect. That's not the kind of thing a prosecutor is supposed to do as a prosecutor, is it? Is he immune for that? Even assuming that sort of immunity carries forward from the trial to the parole board, let's say it carries over. So whatever immunity he has at trial he has before the parole board, but he wouldn't be immune for statements about his own personal opinion. Well, I would argue that the Pardons Board is a different forum from what could have been in front of a jury in that the statutory mandate that a prosecutor participates is because the Pardons Board does want to know, in effect, not only the facts of the case, but in essence an opinion simply because they're making different I don't know what the reason is.     I mean, what is it? What does he say to the parole board? If this is my opinion or this is my opinion of the DA? I would have to say it would probably be his own opinion based upon his knowledge of the specific facts of the case. And that particular defendant's criminal history. Okay. Thank you. And simply in closing, I would also note that the statements that Mr. Ponicello made to the media would not be covered by the absolute immunity. However, it is our position that those statements couldn't be used to then circumvent the immunity in the context of the malicious prosecution cause of action. I'm not sure what that means. Excuse me? I'm not sure what that means. Well, the appellant has made an issue about the statement that was included in a newspaper article that ran. I agree. That's not covered by prosecutorial immunity. No. No. But our position was simply that that statement could not then be used as evidence of malice in the prosecution for purposes of a malicious prosecution cause of action. It could be used for State defamation purposes. Perhaps. But not within this context. Okay. Thank you. I won't belabor the point, but when I came into the case at the Lake Juncture, we filed the motion to amend the complaint to bring in the proper parties and engage in discovery. At the time in which prior to the scheduling order dates, the police department filed the motion for summary judgment. At that point in time at the hearing, we were also trying to take the depositions of the district attorney's, Rex Bell, as well as Frank Bonicello. The magistrate was handling discovery, treated Judge Jones's granting of the summary judgment to the police department as to the whole case. We filed our notice of appeal originally on that basis when we ultimately ended up in the settlement conferences when we tried to sort out whether, in fact, the county DA's office had actually been subsequently dismissed by the court. And later is when their motions were filed. We were never given the opportunity, as the judge promised, to allow us to engage in the discovery of at least those two individuals. What happened after he said, I'm going to grant summary judgment, but I won't do it right away to allow you to take discovery? What happened after that? That's when we were trying to depose the two prosecutors, and the county filed protective orders at that time. At the hearing in front of the magistrate, he then said the case is over at this point, and so we weren't allowed to do any further discovery at that time. Well, they filed motions for protective orders, but I don't think they did the record. I don't think the judge ruled on those motions. I understand. He ruled on the summary judgment motions and prepared those motions. Some unorthodox also. I understand, Judge, and that was part of the quandary that all the parties were left in at that point in time. I would also point out that Rex Bell, at the time of this pardons board hearing, had communicated to the state public defender's office representing the school and that he felt that the sentence was harsh, and, indeed, when Frank Ponticello came in there and represented himself as a prosecutor for 11 1⁄2 years, wasn't speaking on behalf of the office, but said, I'm looking forward to having a conversation with my former boss, Rex Bell, concerning this case, and notwithstanding his recommendation, I would certainly urge the board not to grant any type of leniency in this case at that juncture when he starts talking about identity theft, a crime that she wasn't even convicted of. I would speak to the court on that basis. Okay. Thank you. Judge Osagio, stand cemented. We will next hear argument in the United States v. Louise Kahiora.
judges: Kozinski, Reinhardt, Timlin